UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LEE LYTLE,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. EDCV 10-1971 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

## I. SUMMARY

On January 6, 2011, plaintiff Mary Lee Lytle ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; January 12, 2011 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand because the Administrative Law Judge ("ALJ") failed properly to consider competent lay witness evidence and the Court cannot find such error harmless.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 10, 2007, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 8, 117). Plaintiff asserted that she became disabled on January 11, 2007, due to "cervical and lumbar injuries, fms [focal motor seizure], [and a] need [for] knee replacement." (AR 140). The ALJ examined the medical record and heard testimony on July 8, 2009 from plaintiff (who was represented by counsel), one of plaintiff's daughters (Mary Glacil), and a vocational expert. (AR 17-47).

On December 9, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 8-16). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical spine and lumbar spine, fibromyalgia, carpal tunnel syndrome, gastro esophageal reflux disease, and hypertension (AR 10-11); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 11-12); (3) plaintiff retained the residual functional capacity to perform sedentary work (20 C.F.R. § 404.1567(a)) with certain limitations[1] (AR 12); (4) plaintiff could perform her past relevant work as a real estate clerk and administrative assistant (AR 15); and

---

[1] The ALJ determined that plaintiff could perform a limited range of sedentary work, specifically plaintiff (i) could lift no more than ten pounds; (ii) could only be on her feet a total of two hours in an eight hour day; (iii) could not sit any longer than forty minutes at one time; (iv) must not stand or walk more than forty-five minutes at one time; (v) must not perform forceful gripping or grasping; (vi) would miss work up to two times per month; and (vii) must be able to lie down during her lunch break. (AR12).

2

(5) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (AR 14).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///

|   |     |                                                                                  |
|---|-----|----------------------------------------------------------------------------------|
|   | (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five. |
|   | (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

### B.   Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. A Remand is Appropriate Because the ALJ Failed Properly to Consider Competent Lay Evidence and the Court Cannot Find Such Error Harmless

Plaintiff contends that a reversal or remand is warranted because the ALJ (1) failed adequately to address the written statement supplied by one of plaintiff's daughters, Anna Marie McFarland, and to provide adequate reasons for rejecting such evidence; and (2) completely failed to consider the hearing testimony provided by another one of plaintiff's daughters, Mary Glacil. (Plaintiff's Motion at 6-9). The Court agrees. As the Court cannot find that the ALJ's errors were harmless, a remand is warranted.

#### 1. Pertinent Facts

In a Third Party Function Report dated November 11, 2007, plaintiff's daughter, Anna Marie McFarland, stated, *inter alia*, that plaintiff (i) is very depressed (AR 167); (ii) can sleep only two to three hours at a time due to her pain (AR 168); (iii) cannot button, zip or tie her clothing without help; (iv) has trouble getting in and out of the bath, lifting her arms, shaving, cutting things, getting up from the toilet (AR 168); (v) spends about one to four hours each week doing household chores such as wiping counters, laundry, and sweeping, but needs help carrying the laundry (AR 169); (vi) shops two to four times per month for no more than one hour at a time (AR 170); (vii) is very weak and shaky and very tired (AR 170); (viii) does not engage in any of her previous hobbies because they are too painful (AR 171); (ix) has trouble with, *inter alia*, lifting, squatting, bending, standing, reaching, walking, sitting, and using her hands (AR 172, 174); (x) cannot kneel at all or climb more than three to four steps, can lift only one to

five pounds, cannot squat, gets tired standing after 5-10 minutes, and needs to rest 5-10 minutes after walking 50-100 yards (AR 172, 174); (xi) at times has pain that is so severe that she is unable to move her arms and is scared that she is paralyzed (AR 173); (xii) has swelling in her knee which prevents her from getting up (AR 174); and (xiii) loses sensation for long periods of time in her hands and her hands shake uncontrollably and are sore all the time (AR 174). Ms. McFarland also stated that she helps her mother with daily chores, washes her mother's hair, trims her nails, and drives her to appointments. (AR 174).

On July 8, 2009, plaintiff testified at the administrative hearing regarding her symptoms and limitations. (AR 19-40). She testified, *inter alia*, that she: (i) was laid off from her job but could no longer do her prior work (AR 20-21); (ii) suffers from fibromyalgia as well as pain in her neck, back, hips, and legs from bone spurs (AR 22); (iii) suffers from depression for which she takes medication and for which she saw a psychiatrist until the death of her husband (AR 22, 24, 36-37); (iv) cannot sit for more than 40 minutes at a time due to severe pain, can stand for no more than 10 to 15 minutes at a time before having to sit down, and cannot walk for an hour without pain (AR 26-28, 35-36); (v) has to lie down four to five times per day for 15 minutes to an hour each time (AR 29); (vi) cannot open jar lids without help (AR 31-32); (vii) takes two-and-a-half hours to get ready every morning due to severe pain[2] (AR 33); (viii) wears a wrist brace for carpal tunnel syndrome (AR 35); and (ix) suffers from hypertension (AR 38).

---

[2]Plaintiff testified that her fibromyalgia affected here in the following manner:

> Well, number one it affects your joints, your muscles, you have frequent headaches, just the first few steps after you get out of bed . . . I can't put my full foot on the floor, I have to [] tiptoe until I can stretch out those ligaments. It [] fogs your brain, you can't think straight. You all over [sic] don't feel good. The [] quality of life just isn't there.

(AR 33).

1    Plaintiff's daughter, Mary Glacil, also testified at the July 8, 2009
2 administrative hearing, and stated that plaintiff (i) has a very hard time getting up
3 in the morning, and is very stiff and lethargic (AR 41); (ii) is very weepy (AR 41);
4 (iii) has difficulty leaving the house because of her pain (AR 41); (iv) has more
5 bad days than good days (AR 41, 43); (v) needs to lie down more than she is up
6 (AR 42); (vi) needs helping doing chores around the house (*e.g.*, vacuuming) (AR
7 42); (vii) sometimes experiences swelling in her legs so much that "they look like
8 stuffed sausages" (AR 43-44); and (viii) when plaintiff over exerted herself during
9 her husband's funeral, her legs swelled up so much that "she was in bed for [a]
10 week" thereafter (AR 43).

11   In the administrative opinion, the ALJ gave "little weight" to the lay
12 statements of Anna Marie McFarland, essentially because (1) McFarland is
13 plaintiff's daughter, and thus may have been biased (*i.e.*, "[McFarland's] close
14 relationship with [plaintiff] . . . may have influenced her desire to help
15 [plaintiff]."); (2) McFarland's "observations [of plaintiff] may not be reflective of
16 [plaintiff's] maximal capacities"; and (3) McFarland's lay statements conflicted
17 with the record medical evidence. (AR 15).

18         **2.      Pertinent Law**

19   Lay testimony as to a claimant's symptoms is competent evidence that an
20 ALJ must take into account, unless he expressly determines to disregard such
21 testimony and gives reasons germane to each witness for doing so. Stout, 454
22 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.
23 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay
24 witness testimony in discussion of findings) (citation omitted); Regennitter v.
25 Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir.
26 1999) (testimony by lay witness who has observed claimant is important source of
27 information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462,
28 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how

impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to work). The standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

### 3. Analysis

As the above-stated facts reflect, the lay statements of Ms. McFarland are, on the whole, consistent with, and corroborate plaintiff's testimony regarding the extent of her symptoms and limitations. Such testimony was competent lay evidence that the ALJ was required to take into account unless he expressly determined to disregard it and gave reasons therefor. Nonetheless, the reasons the ALJ provided for rejecting the lay statements from Ms. McFarland were not adequate. First, "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). Second, the ALJ's conclusory assertion that Ms. McFarland's observations "may not [reflect plaintiff's] maximal capacities" is not a specific, germane reason for discrediting lay statements. See id. ("[T]estimony from lay witnesses who see the claimant every day is of particular value. . . .") (citation omitted). Finally, the ALJ's conclusory finding that unspecified record medical

8

evidence conflicts with Ms. McFarland's statements is not a germane reason for rejecting the competent lay evidence. See, e.g., Kimzey v. Commissioner of Social Security, 2011 WL 1230818, *25 (E.D. Cal. Mar. 30, 2011) (ALJ's conclusory finding that lay statement "was 'not consistent with the preponderance of the opinions and observations by medical doctors' is not a germane reason for rejecting the lay [evidence].").

In addition, the ALJ made no specific mention of the testimony given at the administrative hearing by plaintiff's other daughter Mary Glacil. Ms. Glacil's testimony was competent lay evidence that the ALJ was required to take into account unless he expressly determined to disregard it and gave germane reasons therefor. The ALJ erred in not providing any reasons for rejecting such lay testimony.[3] The Court cannot conclude that these errors were harmless because it cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1055-56. If fully credited, Ms. McFarland's statements and Ms. Glacil's testimony substantially support plaintiff's description of her symptoms and limitations, and thus could have caused a reasonable ALJ to reach a different

---

[3]The ALJ may, in fact, have considered the hearing testimony of Ms. Glacil, but erroneously attributed it to plaintiff's other daughter (*i.e.*, Ms. McFarland). (AR 15). In the administrative decision, the ALJ stated "I have also considered the statements of [plaintiff's] daughter, Anna Marie McFarland (*Testimony* and Exhibit 7E)." (AR 15) (emphasis added). Since Ms. McFarland did not testify at the hearing, it is reasonable to infer that the "testimony" identified in the foregoing sentence actually refers to that given by Ms. Glacil, plaintiff's daughter who did testify. Even assuming that the ALJ did consider Ms. Glacil's testimony, the ALJ, nonetheless, failed adequately to address such testimony in the administrative decision. To the extent the ALJ intended to reject both Ms. Glacil's testimony and Ms. McFarland's statements for identical reasons, such a collective rejection of lay evidence is improper. Cf. Smolen, 80 F.3d at 1289 (the testimony of "family witnesses" was improperly rejected where it resulted in a wholesale dismissal of the testimony of an entire group, without giving reasons germane to each member of that group). Moreover, for the same reasons discussed above with respect to Ms. McFarland, the ALJ failed to provide adequate reasons for rejecting Ms. Glacil's testimony.

disability determination. Accordingly, this Court cannot deem the ALJ's failure to address the lay evidence supplied by plaintiff's daughters harmless.

V.   **CONCLUSION**[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   September 1, 2011

```
                          /s/
           _____
                  Honorable Jacqueline Chooljian
                  UNITED STATES MAGISTRATE JUDGE
```

---

[4] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)[.][; see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).]

[5] The Court need not, and has not adjudicated plaintiff's other challenge to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the ALJ may wish to reconsider his evaluation of the treating physician's opinions. As plaintiff points out, the ALJ's assertion that Dr. Wilson's opinions are inconsistent with plaintiff's demonstrated abilities appears to be based, at least in part, on a misinterpretation of plaintiff's hearing testimony. In addition, the ALJ points to no evidence in the record which supports the ALJ's conclusory assertion that Dr. Wilson was improperly advocating for plaintiff.